UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Northern States Power Company, Minnesota d/b/a Xcel Energy,<br><br>   Plaintiff,<br><br>v.<br><br>International Brotherhood of Electrical Workers, Local 160,<br><br>   Defendant. | Court File No.<br><br>**COMPLAINT** |

## **INTRODUCTION**

1. Northern States Power Co., a Minnesota corporation d/b/a Xcel Energy ("NSP"), brings this action to vacate an arbitration award issued on June 7, 2011, involving the above-captioned parties.

2. The arbitration dealt with a grievance filed by the International Brotherhood of Electrical Workers, Local 160 (the "Union").

3. The Union challenged whether NSP's termination of Curtis Snow, an employee represented by the Union, was for just cause pursuant to the parties' collective bargaining agreement.

4. The Arbitrator's Award denied the Union's grievance in part and sustained it in part.

5. By ordering that Mr. Snow be reinstated to employment with NSP without backpay, the Arbitrator exceeded his authority under the collective bargaining agreement

because: (1) he found that just cause existed for Mr. Snow's termination; and (2) he improperly considered evidence that was not known to NSP at the time of Mr. Snow's termination.

## JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 151 *et seq.*, Section 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185, 9 U.S.C. § 10, and 28 U.S.C. § 1331.

7. Venue is proper in the United States District Court for the District of Minnesota under 29 U.S.C. § 185, 9 U.S.C. § 10, and 28 U.S.C. § 1391.

## PARTIES

8. NSP owns and operates a public utility that generates and distributes electricity throughout the Minneapolis-St. Paul metropolitan area, out-state Minnesota communities, North Dakota, South Dakota, and Wisconsin.

9. NSP's headquarters are located at 414 Nicollet Mall, Minneapolis, Minnesota, 55401.

10. NSP is an employer engaged in commerce in the District of Minnesota within the meaning of the National Labor Relations Act ("NLRA").

11. The Union represents employees in a bargaining unit of NSP and is a "labor organization" within the meaning of the LMRA.

12. The Union's headquarters are located at 2909 Anthony Lane, St. Anthony, Minnesota, 55418.

## STATUTORY FRAMEWORK

13. Labor relations between employers and labor organizations, including NSP and the Union, are governed by the NLRA, 29 U.S.C. § 151 *et seq.*, as amended by the LMRA, 29 U.S.C. § 171 *et seq.*

14. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes lawsuits against labor organizations "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."

## FACTUAL BACKGROUND

15. NSP and the Union are parties to a collective bargaining agreement covering the Metro West Region of NSP referred to as the Metro West Region Labor Agreement ( the "Agreement"). A copy of the Agreement is attached as Exhibit A.

16. The relevant Agreement was effective January 1, 2008 through December 31, 2010.

17. The current Agreement is effective January 1, 2011 through December 31, 2014. All relevant acts occurred while the prior Agreement was in effect.

18. Article I, Section 2 of the Agreement contains a management rights clause that provides as follows:

> The right, in accordance with the provisions of this Agreement, to employ, promote, discipline and discharge employees and the management of the property are reserved by and shall be vested in the Company. The Company shall have the right to exercise discipline in the interest of good service and the proper conduct of its business.

3

19. Article II of the Agreement establishes an internal grievance procedure for the resolution of disputes regarding the interpretation or application of the Agreement or the parties' compliance with the Agreement.

20. Article III of the Agreement provides for the arbitration of timely and proper grievances that are not resolved pursuant to the internal grievance procedures set forth in Article II.

21. Section 1(h) of Article III limits the scope of the arbitrator's authority as follows:

> In reaching an award, the Arbitration Board shall not go beyond the evidence submitted and shall interpret only the signed Agreement between the parties hereto, and it shall not be the right of the Arbitration Board to render decisions which have as their effect the enforcement on either party of new rules or regulations covering the conduct of either the Company or the employees covered herein.

22. As a public utility, NSP is committed to ensuring the safety of its customers and the general public.

23. NSP publishes a Code of Conduct provides that states, among other things, that "Our commitment to safety extends beyond our Employees to our customers and the community."

24. Curtis Snow worked as an employee of NSP for approximately two years prior to his termination on August 6, 2010.

25. Mr. Snow was classified as a "Journeyman Lineman" and was a member of the bargaining unit represented by the Union while he was employed by NSP.

26. As a "Journeyman Lineman," Mr. Snow's job responsibilities involved responding to electrical power outages and repairing electrical problems.

27. Mr. Snow's job responsibilities included assignments where it was possible that Mr. Snow would be working alone and unsupervised for periods of time up to forty-five minutes.

28. For example, Mr. Snow's job responsibilities as a "Journeyman Lineman" could require him to patrol alleys or private backyards looking for electrical problems or to enter a customer's home to repair a damaged electric meter.

29. In July 2010, NSP conducted a routine background check on Mr. Snow and learned that on May 4, 2010, Mr. Snow pled guilty to three felony counts of possession of a pornographic work involving a minor.

30. NSP also learned that one of the conditions of Mr. Snow's probation was that he could have "No contact with a minor until approved."

31. At the time of this discovery, Mr. Snow had not informed NSP about his convictions or the conditions of his probation, which prevented him from having any contact with a minor.

32. After learning about Mr. Snow's three felony convictions and the terms of his probation, NSP further investigated the matter.

33. NSP determined that Mr. Snow could not perform his job duties as a Journeyman Lineman because of the specific statement in the conditions of his probation that Mr. Snow could have "No contact with a minor until approved."

34. NSP determined that it could not ensure that Mr. Snow would have no contact with a minor while performing his job duties for NSP.

35. As a result of Mr. Snow's convictions and the resulting probation conditions, NSP terminated Mr. Snow's employment on August 6, 2010.

36. The Union submitted a formal grievance under the Agreement regarding Mr. Snow's termination on August 13, 2010.

37. The parties were unable to resolve the matter using the Agreement's internal grievance procedures and subsequently submitted the matter to arbitration.

38. On August 17, 2010—eleven days *after* Mr. Snow's termination and four days *after* the Union filed a formal grievance challenging Mr. Snow's termination—a judge modified the terms of Mr. Snow's probation to allow "incidental contact" with a minor in the performance of his job duties.

39. The parties selected Jay C. Fogelberg (the "Arbitrator") as a neutral arbitrator to resolve the dispute.

40. The parties stipulated that the issue for the Arbitrator to decide was "Was the Grievant, Curtis Snow, terminated for just cause? If not, what shall the appropriate remedy be?"

41. An arbitration hearing was held on March 8, 2011 in Minneapolis, Minnesota, and the hearing was continued on March 31, 2011.

42. On May 16, 2011, the parties submitted their post-hearing briefs to the Arbitrator.

43. On June 7, 2011, the Arbitrator issued an Award in which he denied the Union's grievance in part and sustained it in part.

44. The Arbitrator ordered that Mr. Snow be reinstated to employment with NSP without backpay. A copy of the Arbitrator's Award is attached as Exhibit B.

45. The Arbitrator's June 7, 2011 decision acknowledged that NSP had legitimate reasons for terminating Mr. Snow.

46. The Arbitrator's decision included the following findings:

> "[N]o one questions the legitimacy of the Company's hesitation in employing someone who has been convicted of such a crime, given the potential for civil liability, not to mention adverse publicity, were any incident to occur involving the Grievant and a minor while he was on the job."
>
> "[T]here can truly be little question but that a reasonable and readily discernable nexus [exists] here between the Grievant's criminal record and his work."
>
> "A court order that limits a Lineman to either incidental contact with a minor or not at all, could certainly have a potential impact relative to his job functions, or otherwise adverse consequences to the Company's business."
>
> "Certainly the Employer has a legitimate interest to ensure the public's safety in delivering their product, as well as making sure employees are able to perform their job duties in a safe and efficient manner that does not pose a risk of harm to their customer base, and which complies with the law. This concern is both genuine and most justified."
>
> "To the extent that Mr. Snow was convicted of a serious crime that raises some very legitimate concerns on the part of Management going forward, *they have demonstrated justification for their decision.*"

(emphasis added).

7

47.  Despite the Arbitrator's explicit finding that NSP "demonstrated justification for their decision," the Arbitrator ordered that NSP should have imposed "a penalty less than the Grievant's dismissal" and ordered that NSP reinstate Mr. Snow without backpay.

48.  In support of his decision to reinstate Mr. Snow, the Arbitrator cited the fact that the judge modified the conditions of Mr. Snow's probation "approximately ten days following the notice of termination forwarded to Mr. Snow."

49.  The Arbitrator stated that NSP should have placed Mr. Snow on a "crisis suspension"—a managerial process in which an employee can be suspended, with pay—to allow Mr. Snow time to apply for modification of the terms of this probation instead of terminating Mr. Snow based on the unambiguous language in his conditions of probation as of August 6, 2010.

## COUNT ONE

50.  NSP restates and realleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

51.  The Arbitrator's findings that NSP had legitimate and reasonable concerns about employing Mr. Snow and that NSP "demonstrated justification for their decision" constituted an implicit, if not an explicit, finding that NSP had just cause to terminate Mr. Snow.

52.  By finding just cause for termination and then proceeding to fashion an alternate remedy without any basis in the parties' Agreement, the Arbitrator exceeded the scope of his authority under the Agreement.

53. Because the Arbitrator exceeded the scope of his authority, and because the Arbitrator's award does not draw its essence from the parties' Agreement, the Arbitrator's award should be vacated.

## COUNT TWO

54. NSP restates and realleges all of the allegations in the preceding paragraphs as if fully incorporated herein.

55. By relying on the modification of Mr. Snow's terms of probation—which occurred *after* Mr. Snow was terminated and *after* the Union filed a formal grievance protesting Mr. Snow's termination—the Arbitrator did not confine his considerations to the facts known to NSP at the time of Mr. Snow's termination.

56. By considering evidence that occurred after Mr. Snow's termination, the Arbitrator exceeded the scope of his authority under the parties' Agreement and the scope of the stipulated issue that the parties asked him to decide.

57. By deciding that NSP should have put Mr. Snow on a "crisis suspension" to give him time to seek to modify the terms of his probation, the Arbitrator enforced "new rules or regulations" on NSP without any basis in the parties' Agreement in direct contravention of Article III, Section 1(h) of the Agreement.

58. Because the Arbitrator exceeded the scope of his authority and violated the express terms of the parties' Agreement, the Arbitrator's Award should be vacated.

**WHEREFORE**, NSP respectfully requests that this Court issue an Order:

1. Vacating and setting aside the Arbitrator's June 7, 2011 Award as exceeding the scope of the Arbitrator's authority; and

2. Awarding such costs, fees, and other remedies as this Court deems appropriate.

Dated: September 1, 2011

**BRIGGS AND MORGAN, P.A.**

By: _____
Michael J. Moberg (#0249944)
Michael C. Wilhelm (#0387655)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2157
(612) 977-8400