# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Northern States Power Company, Minnesota, d/b/a Xcel Energy, | Civil No. 11-2533 (DWF/FLN) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| International Brotherhood of Electrical Workers, Local 160, | |
| Defendant. | |

Michael J. Moberg, Esq., and Michael C. Wilhelm, Esq., Briggs & Morgan, PA, counsel for Plaintiff.

Richard A. Williams, Jr., Esq., Williams & Iversen, counsel for Defendant.

## INTRODUCTION

This matter is before the Court on Plaintiff Northern States Power Company, Minnesota's ("NSP") Motion to Vacate Arbitration Award. (Doc. No. 3.)

## BACKGROUND

Plaintiff NSP is a Minnesota corporation doing business as Xcel Energy. (Doc. No. 1, Compl. ¶ 1.) NSP owns and operates a public utility that generates and distributes electricity throughout the Twin Cities metropolitan area, out-state Minnesota communities, North and South Dakota, and Wisconsin. (*Id.* ¶ 8; Doc. No. 10, Wilhelm Aff., Ex. 1 ("Opinion and Award") at 2.) The arbitration at issue in this case concerns a

grievance filed by Defendant International Brotherhood of Electrical Workers, Local 160 (the "Union"). (Compl. ¶ 2.) The Union challenged whether the termination of Curtis Snow ("Snow"), an employee represented by the Union, was for just cause pursuant to the parties' collective bargaining agreement ("CBA").[1] (*Id.* ¶ 3.) The arbitrator denied the Union's grievance in part and sustained it in part when he found just cause for Snow's termination, but ordered that Snow be reinstated to employment with NSP without backpay. (*Id.* ¶¶ 4, 5.) NSP argues that the arbitrator exceeded his authority in finding that just cause existed for Snow's termination and in considering evidence that was not known to NSP at the time of Snow's termination from NSP. (*Id.* ¶ 5.)

Article I, Section 2 of the CBA contains the management rights clause, which reads:

> The right, in accordance with the provisions of this Agreement, to employ, promote, discipline and discharge employees and the management of the property are reserved by and shall be vested in the Company. The Company shall have the right to exercise discipline in the interest of good service and the proper conduct of its business.

(Wilhelm Aff., Ex. 2 at 3.) Article I, Section 3 also provides that "employees . . . shall have a right to a hearing on any differences of opinion as to . . . discharge" and that, in the

---

[1] The collective bargaining agreement covers the Metro West Region of NSP, and is referred to as the Metro West Region Labor Agreement. (Wilhelm Aff., Ex. 2.) The agreement in question was effective January 1, 2010 through December 31, 2010. The parties' current agreement is effective January 1, 2011 through December 31, 2014. (Compl. ¶¶ 16, 17.) All relevant events in this action occurred while the prior agreement was in force. (*Id.* at ¶ 17.)

event that a hearing does not settle these differences, the matter will be brought before the Board of Arbitration. (*Id.*)

Article II of the CBA sets forth an internal grievance procedure for the resolution of disputes regarding "any difference that may arise between the Company [NSP] and the Union, or any employee, concerning the interpretation, application or compliance with the provisions" of the CBA. (*Id.* at 5, 6.) Article III describes the procedure to be followed when timely and proper grievances are not resolved by the internal grievance procedures described in Article II. (*Id.* at 7, 8.) In particular, Section 1(h) of Article III states that:

> In reaching an award, the Arbitration Board shall not go beyond the evidence submitted and shall interpret only the signed Agreement between the parties hereto, and it shall not be the right of the Arbitration Board to render decisions which have as their effect the enforcement on either party of new rules or regulations covering the conduct of either the Company or the employees covered herein.

(*Id.* at 8.)

Snow worked for NSP as a journeyman lineman for approximately two years before his termination on August 6, 2010, and was a member of the Union. (Compl. ¶¶ 24, 25.) As a journeyman lineman, Snow's job responsibilities involved responding to electrical power outages and repairing electrical problems. (*Id.* ¶ 26.) NSP alleges that Snow's job responsibilities included assignments in which it was possible for Snow to be working alone and unsupervised for periods of up to forty-five minutes; for example, when patrolling alleys or private backyards looking for electrical problems, or when entering a customer's home to repair a damaged electrical meter. (*Id.* ¶¶ 27, 28.) While

the Union admits that Snow's job responsibilities included assignments in which it was possible he would be working alone, the Union alleges that it is "contrary to established safety practice for a lineman to work alone and unsupervised" and that if Snow were ever to work alone, it would be "under only the most extraordinary and adverse circumstances." (Doc. No. 7, Answer ¶ 9.) The Union further alleges that in Snow's two years of employment at NSP, he had never worked alone or unsupervised at any time. (*Id.*) The Union explains that established protocol requires that each lineman work in conjunction with another lineman in a team for safety reasons when faced with dangerous conditions. (*Id.* ¶ 10.) At the arbitration hearing, Snow's supervisor Tim French, an NSP witness, testified that linemen are almost always "within eyesight" of one another for safety reasons. (Wilhelm Aff., Ex. 3 at 105–09.) French also testified that since 1988, when he began work as a lineman, he has entered a customer's home to work on a meter only three or four times. (*Id.* at 109.) Customarily, Xcel does not and cannot make repairs inside customers' homes because the wires that go into the home belong to the homeowner. (*Id.* at 109–10.) Therefore, Xcel linemen, as a general practice, only work on the outside of a customer's home. (*Id.*)

In July 2010, NSP conducted a routine background check on Snow and learned that on May 4, 2010, Snow had pled guilty to three felony counts of possession of a pornographic work involving a minor. (Compl. ¶ 29.) NSP learned that one of the conditions of Snow's probation was that he have "no contact with a minor until

4

approved." (*Id.* ¶ 30.) Snow had not informed NSP about his convictions or the conditions of his probation. (*Id.* ¶ 31.) After conducting further investigation, NSP determined that Snow could not perform his job duties as a journeyman lineman because of the "no contact with a minor until approved" limitation. (*Id.* ¶¶ 32, 33.) NSP felt that it could not ensure that Snow would have no contact with a minor while performing his job duties with NSP. (*Id.* ¶ 34.) NSP terminated Snow on August 6, 2010. (*Id.* ¶ 35.) In response, the Union submitted a formal grievance under the CBA on August 13, 2010. (*Id.* ¶ 36.)

The parties submitted the matter to arbitration, and the parties selected Jay C. Fogelberg as the arbitrator of the dispute. (*Id.* ¶¶ 37, 39.) On August 17, 2010 (eleven days after Snow's termination and four days after the Union filed a formal grievance challenging the termination), a judge modified the terms of Snow's probation to allow "incidental contact" with a minor in the performance of Snow's job duties. (*Id.* ¶ 38.) The Union alleges that, prior to Snow's termination, a representative of NSP contacted Snow's probation officer, who advised NSP's representative that the court and the probation officer both intended for the language in Snow's probation conditions to permit incidental contact with a minor that might occur in Snow's performance of his ordinary job duties. (Answer ¶ 14.) The Union alleges that it was the judge's expectation that Snow would continue working at his job with NSP. (*Id.*) At the time the discussion took place between Snow's probation officer and the representative from NSP, Snow's

probation officer offered to go before the court to have the language in the order modified to accurately reflect this intention. (*Id.*) The conversation between Snow's probation officer and NSP's representative took place shortly before the probation officer left on vacation; however, she allegedly indicated that she would have the language changed upon her return. (*Id.*) NSP's representative nonetheless recommended Snow's immediate termination. (*Id.*)

An arbitration hearing was held on March 8, 2011, and continued on March 31, 2011. (Compl. ¶ 41.) The parties stipulated that the arbitrator was to decide the following issue: "Was the Grievant, Curtis Snow, terminated for just cause? If not, what shall the appropriate remedy be?" (Opinion and Award at 2.) On June 7, 2011, the arbitrator issued an award, denying the Union's grievance in part and sustaining it in part. (*Id.* at 17.) The arbitrator agreed that NSP had "demonstrated justification" for its decision to terminate Snow, considering that Snow was convicted of "a serious crime that raises some very legitimate concerns on the part of Management." (*Id.*) However, citing concerns that NSP "rush[ed] to judgment in the course of their [*sic*] investigation without taking the time to consider all relevant evidence," and raising a concern of possible disparate treatment, the arbitrator ultimately concluded that a penalty less than termination was warranted. (*Id.*) Accordingly, the arbitrator ordered that Snow be returned to work without backpay. (*Id.*) In support of this decision, the arbitrator cited the fact that the judge modified the conditions of Snow's probation "approximately ten

days following" Snow's termination.  (*Id.* at 11.)  The arbitrator stated that NSP should have placed Snow on a "crisis suspension" with pay to allow Snow to apply for modification of the terms of his probation instead of terminating him based on the "no contact with minors" language as it existed as of August 6, 2010.  (*Id.* at 12.)

NSP argues that the arbitrator found that it had just cause to terminate Snow, and that by proceeding to fashion an alternate remedy without any basis in the parties' CBA, the arbitrator exceeded his scope of authority under the CBA.  (Compl. ¶¶ 51, 52.)  NSP also argues that by considering the modification of Snow's probation conditions following Snow's termination, the arbitrator did not confine his considerations to the facts known to NSP at the time of Snow's termination, and thus violated Article III, Section 1(h) of the CBA.  (*Id.* ¶¶ 55, 56.)  In addition, NSP contends that by deciding NSP should have put Snow on a "crisis suspension," the arbitrator exceeded his scope of authority by enforcing "new rules or regulations" against NSP in contravention of Article III, Section 1(h) of the CBA.  (*Id.* ¶ 57.)

The Union argues that the arbitration award is consistent with the language of the CBA and the past practices of the parties in interpreting and applying the CBA and is well grounded in jurisprudence surrounding the concept of "just cause" in arbitration proceedings. (Doc. No. 14 at 15, 16.)  The Union also argues that the CBA specifically authorizes the arbitrator to modify penalties after an arbitration proceeding.  (*Id.* at 29.)

**DISCUSSION**

**I.     Legal Standard**

Judicial review of a labor arbitration award is narrow and deferential. *Breckenridge O'Fallon, Inc. v. Teamsters Union Local No. 682*, 2012 U.S. App. LEXIS 388, at *7 (8th Cir. 2012); *see also United Steelwkrs. of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68 (1960). It is not within the Court's scope of review to pass upon the merits of a grievance. *General Drivers & H.U., L. 554 v. Young & Hay Transp. Co.*, 522 F.2d 562, 567–68 (8th Cir. 1975). An arbitration award must be upheld if it "draws its essence from the collective bargaining agreement, and is not merely [the arbitrator's] own brand of industrial justice." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed, and any doubt must be resolved in favor of the arbitrator's authority. *Resilient Floor Etc. v. Welco Mfg. Co. Inc.*, 542 F.2d 1029, 1032 (8th Cir. 1976).

## II.     Scope of Arbitrator's Authority

### A.     Just Cause and Alternate Remedy

NSP and the Union dispute whether the arbitrator found that NSP terminated Snow for just cause.  In addition to the arbitrator's finding that NSP "demonstrated justification" for terminating Snow, NSP cites the arbitrator's following statements: (1) "[N]o one questions the legitimacy of the Company's hesitation in employing someone who has been convicted of such a crime, given the potential for civil liability, not to mention adverse publicity, were any incident to occur involving the Grievant and a minor while he was on the job"; (2) "[T]here can truly be little question but that a reasonable and readily discernible nexus [exists] here between the Grievant's criminal record and his work"; (3) "A court order that limits a Lineman to either incidental contact with a minor or not at all, could certainly have a potential impact relative to his job functions, or otherwise adverse consequences to the Company's business"; and (4) "Certainly the Employer has a legitimate interest to ensure the public's safety in delivering their [*sic*] product, as well as making sure employees are able to perform their job duties in a safe and efficient manner that does not pose a risk of harm to their [*sic*] customer base, and which complies with the law. This concern is both genuine and most justified."  (Opinion and Award at 8, 9, 16.)  NSP notes that the stipulated issue the parties asked the arbitrator to decide was whether Snow was terminated for just cause,

and *if not*, what the appropriate remedy should be. (Opinion and Award at 2 (emphasis added).) NSP argues that once the arbitrator found that Snow was terminated for just cause, the arbitrator did not have the authority to determine a further remedy.

The Union disputes that the arbitrator found just cause, and argues that according to just cause jurisprudence, just cause includes certain essentials of due process that must be followed. (Doc. No. 14 at 22–24.) The Union argues that NSP failed to accord Snow the required due process when it did not follow up with Snow's probation officer or the judge issuing Snow's probation order. (*Id.* at 26.) Further, the Union argues that the arbitrator did not consider after-acquired evidence when he issued the order to reinstate Snow, as NSP's representative had been fully advised at the time of Snow's termination that the terms of Snow's probation order would be modified soon after. (*Id.* at 26, 27.) The Union also criticizes NSP's failure to speak with Mr. French, Snow's supervisor, who testified that it was unlikely that Snow would come into contact with minors in his work. (*Id.* at 27, 28.) The Union argues that the arbitrator was justified in concluding that NSP did not conduct its investigation fairly and objectively. (*Id.*)

The Court finds that the arbitrator's decision included a finding of just cause in Snow's termination. As NSP has argued, it is not relevant that the arbitrator did not use the exact words "just cause," but instead used the phrase "demonstrated justification." *See Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n Intern.*, 343 F.3d 401, 409 (5th Cir. 2003) ("[W]here an arbitrator implicitly finds that just cause exists, it need not recite the

operative phrase 'just cause.'"). The Court concludes that, whether just cause incorporates principles of due process or not, the Union has not succeeded in alleging that there were any procedural deficits in the arbitration hearing or in NSP's investigation. Counsel for the Union argued at the hearing before this Court that it is customary practice for arbitrators to allow employers to introduce after-acquired evidence. However, NSP did not have any duty to suspend its investigation, or to place Snow on "crisis suspension," to wait for a judge to modify Snow's probation conditions. Further, the Court believes that even if NSP had considered the eventual modification of Snow's probation terms, it would likely have terminated Snow's employment anyway. This information was likely known to NSP at the time of termination, and regardless would not have changed NSP's just cause to terminate a registered sex offender. Considering NSP's concerns about employing a registered sex offender, the Court is not convinced that the arbitrator's finding of just cause would have been affected in any way by a mitigation of "no contact with minors" to "only incidental contact with minors in a work context."

For these reasons, and considering the deference with which the Court is to treat arbitration awards, the Court finds that the arbitrator did not exceed his authority in concluding that NSP terminated Snow for just cause.

    **B.    Alternate Remedy**

The Court finds, however, that the arbitrator did not have the authority to fashion an alternate remedy after a finding of just cause. The Union argues that Article I, Section

5 of the CBA authorizes an arbitrator to modify Snow's penalty following the arbitration hearing.[2]  The Court disagrees.  Article I, Section 5, states that in the matter of discharge, "if after hearing witnesses, *the charges are not sustained* . . . the arbitration board may rule that the employee shall or shall not receive full or partial wages from the Company."  (Wilhelm Aff., Ex. 2 at 3 (emphasis added).)  It does not follow that when an arbitrator makes a finding of just cause, he or she may then create an alternate remedy for the grievant.  Indeed, the parties stipulated that the issue to be decided by arbitration was: "Was the Grievant, Curtis Snow, terminated for just cause?  *If not*, what shall the appropriate remedy be?"  (Opinion and Award at 2 (emphasis added).)  Because the arbitrator properly determined that NSP terminated Snow for just cause, the Court finds that the arbitrator exceeded his authority under the CBA in creating an alternative remedy of reinstatement, or suggesting a "crisis suspension."  NSP argues that in suggesting a crisis suspension, the arbitrator was suggesting that a new substantive right be created for employees under the CBA.  (Doc. No. 9 at 14.)  The Union contends that NSP's failure to utilize crisis suspension was a procedural defect that rendered Snow's termination without just cause.  (Doc. No. 14 at 32.)  The Court agrees with the Union that the

---

[2] Article I, Section 5, states that "[i]n the matter of suspension, demotion, or discharge, if after hearing witnesses, the charges are not sustained, the employee shall have his/her record cleared of such charges and the arbitration board may rule that the employee shall or shall not receive full or partial wages from the Company.  No discipline by suspension shall be administered to any member of the Local Union which shall impair his/her seniority rights."  (Wilhelm Aff., Ex. 2 at 3.)

arbitrator did not *require* NSP to put Snow on crisis suspension.  (*Id.* at 31; Wilhelm Aff., Ex. 2 at 12.)  Had the arbitrator done so, he would have exceeded his authority under the CBA.  However, as mandatory crisis suspension was not part of the arbitrator's decision, the Court need not decide this issue.

## CONCLUSION

Considering the deference the judiciary must grant the labor arbitration process, this Court does not reach the merits of NSP's decision to terminate Snow.  However, the Court finds that the arbitrator's finding of just cause was entirely appropriate given the terms of the parties' CBA.  The Court finds that the arbitrator did not improperly consider after-acquired evidence of modification of Snow's probation conditions, as this information was likely known to NSP at the time of termination, and regardless would not have changed NSP's just cause to terminate a registered sex offender.  However, the Court also finds that the arbitrator exceeded the scope of his authority in ordering that Snow be reinstated without backpay, as this decision did not draw its essence from the parties' CBA.  Therefore, the Court vacates the arbitration award only insofar as it requires Snow be reinstated.

## ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Vacate Arbitration (Doc. No. [3]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Court upholds the arbitration award insofar as it finds that NSP terminated Snow for just cause.

2. The Court vacates the arbitration award insofar as it requires that Snow be reinstated as an employee of NSP.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 23, 2012                                  s/Donovan W. Frank
                                                         DONOVAN W. FRANK
                                                         United States District Judge